**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | **CIVIL NO. 20-248 (DRD)** |
| v. | |
| **[1] MARÍA MILAGROS CHARBONIER-LAUREANO,** **[2] FRANCES ACEVEDO-CEBALLOS,** **[3] ORLANDO MONTES-RIVERA,** **[4] ORLANDO GABRIEL MONTES-CHARBONIER,** | |
| *Defendants.* | |

**ORDER ON RECONSIDERATION**

Pending before the Court is defendant, María Milagros Charbonier-Laureano's *Motion for Reconsideration of the Court's September 10, 2021, Opinion and Order at Dkt. 127*. *See* Docket. No. 140[1]. The Government has filed its response in opposition thereto. *See* Docket No. 143.

It is common knowledge that unlike the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure do not provide for motions for reconsideration. In fact, the First Circuit has consistently held that "motions for reconsideration in criminal cases are not specifically authorized either by statute or by rule." *United States v. Ortiz*, 741 F.3d 288, 293 (1st Cir. 2014). However, "[t]he First Circuit [] has considered motions for reconsideration in criminal cases, and applied the same standard to them that is applied to motion for reconsideration pursuant to

---

[1] Codefendants Orlando Gabriel Montes-Charbonier and Orlando Montes-Rivera moved to join Charbonier-Laureano's request for reconsideration. *See* Docket Nos. 143 and 144, respectively. Both motions were GRANTED. *See* Docket No. 157.

Federal Rule of Civil Procedure 59(e)." *United States v. Camacho-Santiago*, 52 F. Supp. 3d 442 (D.P.R. 2014).

Markedly, motions for reconsideration do not provide "a vehicle for a party to undo its own procedural failures [or] allow a party [to] advance arguments that could and should have been presented to the district court prior to judgment." *Iverson v. City Of Bos.*, 452 F.3d 94, 104 (1st Cir. 2006)(internal quotation marks and citations omitted). "Instead, motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009)(quoting *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). A motion for reconsideration is unavailable if said request simply brings forth a point of disagreement between the court and the litigant, or rehashes matters already properly disposed of by the Court. *See e.g., Waye v. First Citizen's Nat'l Bank*, 846 F. Supp. 310 (M.D. Pa. 1994).

Upon a careful examination of the defendant's motion for reconsideration, the Court finds that the defendant's motion does not present newly discovered evidence nor argues that there has been an intervening change in law. *See Iverson*, 452 F.3d at 104. Defendant's motion can only be entertained by the Court if it seeks to correct a manifest error of law. *See Allen*, 573 F.3d at 53. Nonetheless, the defendant is only attempting to re-litigate issues properly disposed of by the Court and voicing her disagreement with the Court's prior ruling.

For instance, the defendant argues that although "[f]rom 2017 to 2020, Mrs. Charbonier was a member of the PR House . . . [she] did not vote for or approve any appropriations bill or

the PR budget." Docket No. 140 at 4. According to Charbonier-Laureano, on those years, the Financial Oversight and Management Board for Puerto Rico (hereinafter, "FOB") "bypassed all PR constitutional mandates related to the budget approvals and imposed the PR general appropriations bill without the PR Legislature's vote or approval." *Id.* It is further added that before the enactment of the Puerto Rico Oversight, Management, and Economic Stability Act, (hereinafter, "PROMESA"), the PR Legislature played an active role in the approval of the general appropriations bill pursuant to the Puerto Rico Constitution. *See id.* According to Charbonier-Laureano, "[a]fter PROMESA's enactment in 2016, Congress upended and set aside the PR Constitution's budget approval process and other budget-related local statutes by delegating ample powers to the FOB over multiple financial aspects of the PR government." *Id.* at 4-5. Section 2142 of PROMESA provides in its pertinent part that,

> The Legislature shall submit to the Oversight Board the Territory Budget adopted by the Legislature by the time specified in the notice delivered under subsection (a). The Oversight Board shall determine whether the adopted Territory Budget is a compliant budget and—
> (A) if the adopted Territory Budget is a compliant budget, the Oversight Board shall issue a compliance certification for such compliant budget pursuant to subsection (e); and
> (B) if the adopted Territory Budget is not a compliant budget, the Oversight Board shall provide to the Legislature—
> (i) a notice of violation that includes a description of any necessary corrective action; and
> (ii) an opportunity to correct the violation in accordance with paragraph (2).

48 U.S.C. § 2142(d).

In turn, the Government argues that the defendant's contention that she had "no role in the submission and approval of the general appropriations bill," "misstates both the law and the facts." Docket No. 143 at 4-5. According to the Government, PROMESA, "a 2016 federal law establishing a financial oversight board to assist in restructuring Puerto Rico's debt" requires for

3

the PR Legislature and the Governor to submit an annual territorial budget to the FOB. *Id.* at 5.

In fact, "[i]f the annual territorial budget developed by the governor and the legislature are

compliant with a long-term fiscal plan developed by the Oversight Board (along with the

governor), the Oversight Board must approve the budget." *See id.*, § 2142(e)(1). However, "[i]f

the Legislature fails to adopt a Territory Budget that the Oversight Board determines is a

compliant budget by the time specified in the notice delivered under subsection (a), the Oversight

Board shall develop a revised Territory Budget that is a compliant budget and submit it to the

Governor and the Legislature." § 2142(d)(2). Notwithstanding, PROMESA disposes that,

> If the Governor and the Legislature fail to develop and approve a Territory Budget
> that is a compliant budget by the day before the first day of the fiscal year for
> which the Territory Budget is being developed, the Oversight Board shall submit a
> Budget to the Governor and the Legislature (including any revision to the Territory
> Budget made by the Oversight Board pursuant to subsection (d)(2)) and such
> Budget shall be—
> (A)deemed to be approved by the Governor and the Legislature;
> (B)the subject of a compliance certification issued by the Oversight Board to the
> Governor and the Legislature; and
> (C)in full force and effect beginning on the first day of the applicable fiscal year.

§ 2142(e)(3).

The Government argues two matters, first "the Court directly (and correctly) described

PROMESA's legal framework in the Order . . . (recognizing that budgets are submitted to the

Oversight Board, not directly enacted into law)." Docket No. 143 at 5. Therefore, "there is no

reason to believe that the Court misunderstood the role of the Puerto Rico House of

Representatives in the appropriations process." *Id.* Second, the fact that Charbonier-Laureano

did participate in the appropriations process even if the bills she supported and voted on were

not enacted into law. *See id.* at 6. According to the Government, the PR House passed budget

legislation in 2017, 2018 and 2019 "with defendant co-sponsoring the legislation in each of those

years and providing favorable votes that led to the passage of the legislation." *Id.* at 6. In support thereof, the Government lists several instances in which Charbonier-Laureano co-sponsored and voted for budget related legislation, namely: (1) a 2017 joint resolution bill calling for a government-wide budget, proposing an allocation of $45,470,000.00 to the PR House; (2) a 2018 legislation proposing the allocation of the same amount of $45,470,000.00 to the PR House; (3) a 2019 legislation proposing the allocation of $35,228,000.00 to the PR House and; (4) a 2020 budget proposing the allocation of $75,903,000.00 to the Legislative Assembly (PR House and PR Senate), the only instance in which Charbonier-Laureano was absent and did not vote on the legislation. *See Id.* at 7.

Accordingly, the Government maintains that although an impasse as to budgeting was reached between the FOB and the Puerto Rico government in 2017, 2018, 2019 and 2020, which resulted in the FOB rejecting the government's budgets in favor of its own, it does not mean that Charbonier-Laureano "did not vote for or approve any appropriation bill," as the defendant alleges. *See id.* Therefore, it was reasonable for the Court to conclude that Charbonier-Laureano, "as a legislator at-large, played an important role in the submission and approval of the general appropriations bill which included her office's own budget." Docket No. 127 at 12.

Charbonier-Laureano asserts that since she had "no role in the submission and approval of the general appropriations bill, or in the budget assigned to her office as a member of the PR House, the Government failed to show that the alleged criminal conduct, which is denied, was connected to a legislative act by Mrs. Charbonier, an element of a Section 666 offense." Docket No. 140 at 6. The Government, in turn, argues that the Court did not make such a finding regarding the connection between Charbonier-Laureano's criminal conduct and legislative action

she undertook, and accordingly, the Court "cannot reconsider a finding it didn't make." Docket No. 143 at 8.

The Court agrees and reiterates its prior ruling that pursuant to *United States v. Bravo-Fernández*, 722 F.3d 1 (1st Cir. 2013), "the definition of 'agent' in § 666 clearly includes a legislator as an agent of the Commonwealth. Stating otherwise transgresses the purpose of Congress when enacting § 666 as interpreted by several circuits." Docket No. 127 at 11. In fact, "[§] 666 applies to any individual who represents the agency in any way, as representing or acting on behalf of an agency, that can affect its funds even if the action does not directly involve financial disbursement. *See Bravo-Fernández I*, 722 F.3d at 11 (quoting *United States v. Phillips*, 219 F.3d 404, 422 (5th Cir. 2000)). It is further noted, that as expressed in the *Opinion and Order*, a bribery offense under § 666 is not restricted to "official acts" as defined in 18 U.S.C. § 201 and "[t]he Supreme Court does not extend its applicability to § 666." Docket No. 127 at 14.  Contrary to § 201, a defendant need only "intend[] to be influenced or rewarded in connection with any business, transaction, or series of transactions" of the relevant entity pursuant to § 666(a)(1)(B). Therefore, Charbonier-Laureano's challenge of the Court's consideration of the appropriation process is unfounded.

Lastly, although the First Circuit has questioned whether § 666 imposes an obligation for the defendant to act in her legislative capacity, the allegation regarding the salary raise to her aid from $800.00 to $2,900.00 in order to facilitate the fraud scheme is sufficient as Charbonier-Laureano's authority for said raise rests exclusively on her role as an elected legislator. She holds no other role that would enable her to authorize the salary increase Acevedo-Ceballos received. *See Bravo-Fernández I*, 722 F.3d at 14.

6

Therefore, for the aforementioned reasons, the Court hereby **DENIES** the Charbonier-Laureano's *Motion for Reconsideration of the Court's September 10, 2021, Opinion and Order at Dkt. 127. See* Docket No. 140.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on this 14th day of January, 2022.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge